## SODERS v. ARMSTRONG et al.

No. 24396. April 30, 1935.

Bruce & Jefferson, for plaintiff in error.

Robert Burns, Lynn Adams, W. N. Stokes, Geo. W. Grant, W. C. Hall, W. R. Withington, and Pearson & Houston, for defendants in error.

CORN, J. This is an appeal from the district court of Oklahoma county, wherein judgment was rendered for the plaintiffs, and defendant appeals to this court. The parties will be referred to hereinafter as they appeared in the trial court, in the reverse order here.

Florence Armstrong, A. C. Coffman, T. F. Cooper, and J. C. Davis filed this action in the district court of Oklahoma county against the Slick Pipe Line Company, alleging that Armstrong, Coffman, and Davis own an undivided 1/20th interest each in the mineral rights under lots 10 and 11 in block 1, Reno avenue addition to Oklahoma City, and that T. F. Cooper had an undivided one-tenth interest in the mineral rights in said property, and that same was leased to the Lard Lease, Inc., a corporation, and that Slick Pipe Line Company, a corporation, had run a large amount of oil from said lease, and failed to account to the plaintiffs for their proportionate part of the royalty. They asked for an accounting against the Slick Pipe Line Company. The pipe line company filed an answer and cross-petition, denying that Armstrong, Coffman, Cooper, or Davis had any interest in the property, but that the interest claimed by them was claimed by one Emma Soders. The cross petition admitted that the property was leased; that the pipe line company had purchased oil produced from said property, including the royalty oil; and set up that Emma Soders was also claiming said royalty oil in question and asked that the court determine the real owners of the royalty in said proceeding; and that defendant be protected in the payment to the rightful owners. When this answer and cross-petition was filed, the plaintiffs filed an amended petition, which, in addition to asking the accounting against Slick Pipe Line Company, made Emma Soders a party defendant and asked that their title be quieted as against her, and alleging that they were the owners and in peaceable possession of a one-twentieth undivided interest in the mineral rights in said property, except T. F. Cooper, who owned a one-tenth interest. Emma Soders then filed an answer and cross-petition, in which answer she denied that the plaintiffs owned any interest in lots 10 and 11, block 1, Reno avenue addition to Oklahoma City, and for cross-petition Emma Soders alleged that she was the owner of said property and in quiet, peaceable, and open possession of same, and that she owned one-fourth of the oil, gas, and other minerals under said property; that plaintiffs claimed some right in the property, which was junior and inferior to her rights and should be canceled as a cloud upon her title; that she did not know the exact nature of plaintiffs' claim, but was informed that they claimed some interest by virtue of a power of attorney purported to have been executed by Emma Soders to J. B. Hensley, dated November 3, 1930, recorded in book 129, page 375, Miscellaneous Records, and by a mineral deed, executed by J. B. Hensley to M. L. Roberts, dated November 14, 1930, and recorded in book 130, page 311, and another mineral deed purported to have been executed by J. B. Hensley, attorney in fact, to M. L. Roberts, dated January 19, 1931, and recorded in book 125, page 632, Miscellaneous Records of Oklahoma county, and by several other mesne conveyances from M. L. Roberts to the plaintiffs; and said pleading then further stated that all of said instruments from Hensley to Roberts, and Roberts to the plaintiffs, were void because the power of attorney did not authorize J. B. Hensley to make a valid conveyance of any interest in the land, and that she did not execute said power of attorney, but that same was forged and fraudulent, and that the plaintiffs had notice of such facts. She then prayed that she be decreed to be the owner of the property and that the several conveyances from Hensley to Roberts, under the power of attorney, and from Roberts to the plaintiffs, be canceled as clouds on her title. The plaintiffs then filed a reply, denying the allegations in the answer and cross petition of Emma Soders and alleged that the said power of attorney gave J. B. Hensley full power and authority to convey the property of Emma Soders to M. L. Roberts, and that plaintiffs had no notice of any fraud or forgery in connection with the power of attorney, and they prayed that the cross-petition of Emma Soders be dismissed, and that she take nothing by reason thereof.

A judgment was rendered in favor of the plaintiffs, quieting title to the said land against the defendant, and she appeals from the judgment to this court.

The defendant analyzes and discusses the power of attorney under several propositions and assignments of error, but her entire discussion, it occurs to us, may be resolved into two propositions:

(1) Lack of power in the power of attorney to form the basis or source of title, to the effect there can be no innocent purchaser for value within the meaning of the law.

(2) Because of the fraud practiced in procuring the purported power of attorney in the manner amounting to second degree forgery, there can be no innocent purchaser for value within the meaning of the law.

The power of attorney, which is shown at page 146 of said case-made, is as follows:

"Power of Attorney

"Whereas, the undersigned Emma Soders is the owner of the following described real estate situated in Oklahoma county, Oklahoma, to wit: Lots 10 and 11, block one (1) Reno avenue addition, to Oklahoma City, Okla.

"And whereas, I desire to appoint an agent and an attorney in fact for the purpose of selling my royalty under the above described property.

"Therefore, I hereby appoint, nominate, and name J. B. Hensley as my attorney in my place and stead to transact any and all business in connection with the sale of mineral rights under the above land the same as if I myself were to carry out such transaction in person, and any sale of any of the mineral rights under such land consummated by the said J. B. Hensley I hereby ratify and approve the same as if said sale were made by myself.

"Witness my hand this 3rd day of November, 1930.

"Emma Soders
"(her X mark)

"Witness to mark:
"Edward T. Jackson
"J. G. Golding

"I, Edward T. Jackson, one of the above witnesses to the mark of Emma Soders hereby certify that I wrote the name of Emma Soders to the within instrument at her request and in her presence.

"Edward T. Jackson

"State of Oklahoma
"County of Oklahoma, ss.

"Before me, the undersigned notary public in and for said county and state, on this 3rd day of November, 1930, personally appeared Emma Soders, to me known to be the identical person who executed the within and foregoing instrument by her mark

in my presence and in the presence of J. G. Golding and Edward T. Jackson as witnesses, and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

"Witness my hand and official seal the day and year above mentioned
(Seal)
"My Commission Expires:
"January 6, 1932

"H. E. Cole,
"Notary Public."

The defendant has cited to this court a number of cases, setting out the general rule that where a broker is given power to sell, this does not authorize him to convey property or enter into a contract that is binding upon a principal. A large number of cases cited by the defendant lay down the rule that giving authority to a broker to sell does not authorize him to enter into a binding contract of sale. Each of these cases depends upon the particular facts involved in the particular case, and no one of them is a criterion for the case at bar, as each case is determined upon its own merits. We will, therefore, look to the power of attorney, after considering the facts and circumstances under which it was executed as disclosed by the testimony, to ascertain the intention of Emma Soders at the time she executed said instrument.

We notice a part of said instrument which is as follows:

"Whereas, I desire to appoint an agent and an attorney in fact, for the purpose of selling my royalty under the above described property."

It appears to us from the language above construed with the evidence and circumstances in this particular case, it was not her intention to make such appointment for the purpose of finding someone to purchase her royalty. Mr. Roberts had already agreed to buy the royalty. Her son-in-law, J. B. Hensley, was not a broker, but the testimony in the record discloses that she did not trust her son, Henry, but did trust her son-in-law, and wanted him to sell the royalty for her. This fact, construed in connection with the testimony of Mr. Cole, the party who took the acknowledgment to said instrument and explained to her that by said instrument she was placing the title in J. B. Hensley and giving him authority to sell it, and in reply, in effect, she told him this was the purpose of it, and the testimony of Mr. Jackson, who says he heard Mr. Cole explain the power of attorney to

Emma Soders in the manner in which Mr. Cole testified he did, and the testimony of Mr. Roberts to the effect that Emma Soders wanted to sell this royalty, we are led to believe it was the plain intent of Emma Soders to authorize J. B. Hensley to sell her royalty.

Following this first part of the power of attorney, it is then stated:

"Therefore, I hereby appoint, nominate and name J. B. Hensley as my attorney in my place and stead, to transact any and all business in connection with the sale of mineral rights under the above land, the same as if I myself were to carry out such transaction in person; and any sale of any of the mineral rights under such land consummated by the said J. B. Hensley, I, hereby ratify and approve the same, as if said sale were made by myself."

In the latter clause it appears to us to be her plain intent to substitute J. B. Hensley for herself and authorize him to carry out such transactions in person just the same as if she, Emma Soders, were to carry out the transaction, thereby giving full power and authority for the said J. B. Hensley to make, execute, and deliver a good and valid deed, and that the same, as executed by him, would be ratified by her just the same as if she had sold the property and signed her name to said instrument.

In the case of Veatch v. Gilmer (Tex. Civ. App.) 111 S. W. 746, the second paragraph of the syllabus reads:

"A power of attorney, empowering the agent to do any lawful act in the principal's name as if he were present, authorizes the agent to convey the principal's land."

The power of attorney in this case was from John A. Veatch to Samuel H. Veatch, and reads as follows:

"I do hereby appoint Samuel H. Veatch, of the county and state aforesaid, my true and lawful attorney, and I do hereby empower him to do any lawful act for and in my name as if I were present."

The trial court found, regarding this power of attorney, as follows:

"That this is a universal power of attorney, but its operation will be by law restrained to the particular business in respect to which it is presumed the intention was to delegate the authority, and, from all the facts and circumstances in this case, I conclude that it was the intention of the parties by this instrument to empower S. H. Veatch to sell his interest in his lands in Texas, and the deed from S. H. Veatch under this power conveying all of his interest

in the estate of John A. Veatch, deceased, operated as a conveyance thereof. * * *"

On appeal the Court of Civil Appeals concerning the trial court's conclusion of law, regarding the power of attorney, said:

"Our opinion is that the power of attorney authorized the conveyance of the principal's land. We have not found in the decisions an instrument like this one. The cases are numerous in which language as broad and general has been used, but used in connection with other provisions which were held to abridge the exercise of the power. This instrument is free from qualifying features either upon its face or in the evidence. It gives the agent unrestricted and unlimited power to do any lawful act for and in the name of the principal as if he were present. It was a complete substitution of the agent in his place and stead for the doing of any act for and in the name of the principal, which the principal himself might do, if present and acting. He did not see fit to place any limitations upon the acts of his agent, and the courts have no right to do so for him."

This case is almost in line with the case at bar. J. B. Hensley, by the terms of said power of attorney, was given authority to sell and execute a deed therefor to the mineral rights under the property described in said power of attorney, to wit, lots 10 and 11 in block 1, Reno avenue addition to the city of Oklahoma City, and the same would be ratified by Emma Soders. In construing a power of attorney we should construe it to give force to all expressions in the contract, considering the facts and circumstances under which it was executed.

The second proposition of the defendant is that there was fraud amounting to second degree forgery in the procurement of the power of attorney. The trial court found there was no fraud in the procurement of the power of attorney, and the judgment is supported by the clear weight of the testimony. Mr. Roberts, Mr. Cole, and Mr. Jackson all testified that the instrument was explained to Emma Soders and Mr. Cole read practically all of it to her, and the only evidence contrary to this is the testimony of Emma Soders to the effect that she did not understand it. The court found against her contention, and the judgment is in accord with the great weight of the testimony, and as in the case of Beam et ux. v. Farmers' & Merchants' Bank, 121 Okla. 164, 249 P. 325, in the first paragraph of the syllabus, it was held:

"In a case of purely equitable cognizance, the findings and judgment of the trial court will not be disturbed on appeal, unless the

same are clearly against the weight of the evidence."

There are other contentions by the defendant, but they are all without any merit; therefore, the judgment of the trial court is affirmed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.